FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2021

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

DALE EUGENE WILSON,

                Petitioner,

    v.

MICHAEL OBENLAND,

                Respondent.

No. 2:20-CV-00247-SAB

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Dale Eugene Wilson's First Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 5. Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C § 2254. Respondent is represented by Paul Weisser. This matter was considered without oral argument.

After careful review and consideration of the relevant state court record and the submissions of the parties, the Court dismisses the petition.

### Background

On October 7, 2015, Petitioner was convicted by a jury in Douglas County Superior Court of rape of a child in the first degree. ECF No. 9-1 at 652. He was sentenced to 132 months confinement in total. *Id.* In 2016, Petitioner filed a direct appeal to the Washington State Court of Appeals, Division III. *Id.* at 663. On July 6, 2017, the Washington Court of Appeals affirmed the conviction but remanded

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 1**

for an individualized inquiry into Petitioner's ability to pay discretionary legal financial obligations ("the July 6, 2017 direct appeal opinion"). *Id.* at 721. On July 25, 2017, Petitioner filed a Motion for Reconsideration, which was denied on August 15, 2017. *Id.* at 743, 748. On September 13, 2017, Petitioner then petitioned for review to the Washington Supreme Court. *Id.* at 750. On January 3, 2018, the Washington Supreme Court denied the petition. *Id.* at 794. On January 16, 2018, the Court of Appeals of the State of Washington, Division III issued a mandate certifying that its July 6, 2017 decision became the decision terminating further review by the court. *Id.* at 796.

On January 16, 2019, Petitioner filed a Personal Restraint Petition ("PRP") with the Court of Appeals of the State of Washington, Division III, seeking relief from his conviction. *Id.* at 819. Petitioner's PRP alleged ineffective assistance of counsel, witness perjury, and insufficient evidence to support his conviction. *Id.* at 821-25. On January 6, 2020, the Washington Court of Appeals issued an order dismissing the PRP for failure to present an arguable basis for relief in fact or in law ("the January 6, 2020 PRP opinion"). *Id.* at 967. On February 4, 2020, Petitioner sought discretionary review by the Washington Supreme Court. *Id.* at 979. On April 13, 2020, the Commissioner denied review. *Id.* at 1012. On May 12, 2020, Petitioner filed a Motion to Modify Commissioner's Ruling Denying Review. *Id.* at 1016. On July 8, 2020, the Washington Supreme Court denied the motion. The Washington Court of Appeals filed an amended certificate of finality on July 16, 2020. *Id.* at 1028.

On July 10, 2020, Petitioner filed a *pro se* petition in this Court under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. ECF No. 1. He subsequently amended his petition on October 13, 2020, ECF No. 5. In his First Amended Petition, Petitioner raises claims of (1) insufficient evidence to support his conviction; (2) ineffective assistance of counsel; and (3) the

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 2**

prosecution's knowing presentation of perjured testimony.[1] *Id.* On January 21, 2021, the Court denied Petitioner's Motion for Evidentiary Hearing and Appointment of Counsel. ECF No. 18.

### Facts

In affirming Petitioner's conviction, the Washington Court of Appeals outlined the facts as follows:

> This prosecution arises from contact between Dale Wilson, a Bellingham resident, and a minor girl, Betty Lewis, an East Wenatchee denizen. Dale Wilson was the boyfriend of Laurie Lund, the custodian of Betty. Betty Lewis is a pseudonym.
>
> Betty Lewis was born on [redacted] 2005. After her mother died in 2009, she and her brother lived with their aunt, Laurie Lund, in East Wenatchee. Betty was four and Betty's brother was seven when they came to live with Lund. Lund began dating Dale Wilson in October 2012.
>
> Upon the commencement of their relationship in October 2012, Dale Wilson visited Laurie Lund in East Wenatchee most weekends. When Wilson visited, Lund occasionally left him alone with Betty and her brother. Lund worked at an orchard from June to October 2013. On some occasions, when Lund worked, the two children stayed home alone with Wilson.
>
> Dale Wilson and Laurie Lund vacationed in Canada from June 4 to June 21, 2014. In the couple's absence, Betty Lewis and her brother resided with Lund's sister, Julie Bowers, in Odessa. While in Odessa, Betty and her teenage cousin visited a park where Betty asked the cousin if she could hold a secret. Betty then disclosed that Dale Wilson taught her about sex, including the act of a man placing his penis in the three main female holes. When mentioning holes, Betty pointed to her mouth, buttocks, and vagina. Betty told her cousin about sexual contact with Wilson. She informed her cousin that she disclosed the information because she considered Wilson's conduct to be wrong and she could not keep the conduct a secret anymore. The sexual contact happened when she was in the second or third grade.

---

[1] Petitioner also presents a Ground Four in his First Amended Petition, claiming that the accusing witness against him was unreliable. However, Petitioner clarifies in his reply brief that he intends for this argument to be included with his ineffective assistance of counsel claim. ECF No. 15 at 24.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 3**

The teenage cousin escorted Betty to the cousin's home. The cousin ushered Betty into her mother's room and told Betty to repeat to Aunt Julie what Betty told her. Betty repeated her story to Julie Bowers. On a later day, Bowers asked Betty to repeat the description of Dale Wilson's conduct, and Betty recounted the narrative in the same order. Betty added that a man squirted, but Wilson did not squirt in or on her.

On June 21, Dale Wilson and Laurie Lund retrieved Betty and her older brother from Julie Bowers. Bowers then informed Lund about sexual contact between Betty and Wilson. Lund and Wilson, with the two children, returned to East Wenatchee. Lund did not talk about Betty's allegations between June 21 and 24, when Wilson returned to his home in Bellingham.

On June 25, Laurie Lund spoke to Betty about what Betty told Betty's Aunt Julie. Betty responded that Wilson taught her about sex, inserted his penis in her mouth, and demonstrated how men squirt. Wilson warned Betty that, if she informed anyone about his conduct, no one would believe her, and she would undergo a spanking. Betty declared that Wilson performed sex acts with Lund absent from the home. Wilson showed her videos of women sucking men's penises.

Days later Laurie Lund telephoned Dale Wilson and confronted him with Betty Lewis' disclosures. Wilson denied Betty's accusations. He expressed shock and listed reasons for Betty fabricating her stories. Wilson alleged that Betty's grandfather, John Royce, performed sex acts on her and someone else spoke to Betty about sex. Royce had attempted years earlier to sexually abuse his daughter, Laurie Lund. Royce lived in Tonasket, where Betty formerly lived, but he last saw Betty in 2011. John Royce is also a pseudonym.

Laurie Lund reported the sexual conduct of Dale Wilson toward Betty Lewis to law enforcement. On June 27, 2014, East Wenatchee Police Detective Darrin Darnell investigated the allegations. Darnell searched for DNA and semen on the bathroom counter, where Wilson allegedly ejaculated, and for pornographic videos on the computer laptops of Lund and Wilson. Detective Darnell discovered no DNA, semen, or explicit videos.

Detective Darrin Darnell interviewed Betty Lewis in the presence of Laurie Lund. Betty attended second grade and was eight years old at the time of the June interview. Betty disclosed that Wilson described sex to her and the portrayals included boy's use of their penises around girls. Betty added that Wilson showed her videos showing naked people. Betty insisted she did not fabricate her report

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 4**

to punish Wilson. Throughout the interview, Betty's account remained consistent. The detective also interviewed Betty's cousin and Julie Bowers.

. . .

The State of Washington charged Dale Wilson with one count of first degree rape of a child. He stipulated to the admissibility of child hearsay statements in exchange for the State's recommendation, if the jury convicted, of a low-end standard range sentence of ninety-three months.

. . .

During trial, Betty Lewis testified that Dale Wilson came to her family house and made her suck his penis more than once. Wilson testified in his own defense. He stated he learned of Betty's allegations on June 25, 2014. Wilson testified he did not stick his penis in Betty's mouth or otherwise molest her.

. . .

The jury convicted Dale Wilson as charged.

ECF No. 9-1 at 721-724, 726.

### Discussion

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Here, Petitioner was convicted by jury verdict in Douglas County Superior Court of first-degree rape of a child. The court sentenced him to 132 months' imprisonment. Petitioner filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 and is currently in Washington State custody confined at the Monroe Correctional Complex in Monroe, Washington. Petitioner asserts that he suffered violations of his rights as

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 5**

guaranteed by the U.S. Constitution and the conviction challenged arises out of the Douglas County Superior Court, which is located within the jurisdiction of this Court. Respondent also agrees that Petitioner fairly presented his claims to the Washington Supreme Court and therefore has exhausted state remedies in accordance with § 2254(b). ECF No. 8 at 9. Accordingly, the Court has jurisdiction over this matter.

## II.   Legal Standard

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004). Because Petitioner filed the petition for habeas corpus after April 24, 1996, the provisions of the AEDPA govern.

Under the AEDPA, an application for habeas corpus will not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). Only "clearly established Federal law, as determined by the Supreme Court of the United States"—which is defined as the governing legal principles set forth by the Supreme Court at the time the state court rendered its decision— can be the basis for relief under the AEDPA. *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005); *Lockyer*, 538 U.S. at 71. Violations of state law are not cognizable in federal habeas corpus unless the violation of state law is so egregious that it rises to the level of a federal due process violation. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that the question is whether the violation of state law so infected the trial with unfairness such that the resulting conviction violated due process); *Smith v. Ryan*, 823 F.3d 1270, 1282 n.8 (9th Cir. 2016).

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 6**

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases. *Lockyer*, 538 U.S. at 73. A state court decision can also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. *Id.*

On the other hand, a state court decision is an "unreasonable application of clearly established federal law" if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. A federal court may also grant a writ of habeas corpus if a material factual finding of the state court reflects "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court findings of fact are presumptively correct in federal habeas proceedings and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of US Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). A *pro se* prisoner's request for relief will be construed liberally as a habeas petition despite formal imperfections. *United States v. Seesing*, 234 F.3d 456, 463-64 (9th Cir. 2000) (holding that *pro se* filings are to be liberally construed).

Federal habeas corpus relief will not be granted unless the challenged trial error caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Habeas relief may not be granted if there is merely a reasonable possibility that trial error contributed to the verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht*, 507 U.S. at 637.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 7**

### III.   Review of Petitioner's Claims

In his First Amended Petition, Petitioner raises three categories of arguments for why his state conviction is unlawful under clearly established federal law. First, Petitioner argues that his conviction was not supported by sufficient evidence. Second, Petitioner argues that he received ineffective assistance of counsel. Finally, Petitioner argues that the prosecution relied on Laurie Lund's perjured testimony to secure his conviction. ECF No. 5.

In response, Respondent first argues that the conviction was supported by sufficient evidence because any rational jury could have found Petitioner guilty of the charged crime, especially given that juries have broad discretion to draw reasonable inferences and make factual determinations. Second, Respondent argues that Petitioner cannot make out an ineffective assistance of counsel claim, especially given the "doubly deferential" standard of federal habeas review. Third, Respondent argues that Laurie Lund's allegedly perjured testimony was neither false nor material to Petitioner's conviction. Finally, Respondent argues that the state appellate courts that heard Petitioner's case—both on direct appeal and through the PRP—already thoroughly reviewed all of Petitioner's arguments and yet still concluded that his conviction was lawful. Thus, Respondent argues that the Court should defer to the judgments from the state appellate courts and dismiss the petition. ECF No. 8.

### A. Whether Petitioner's conviction was supported by sufficient evidence

Petitioner's sufficiency claim is duplicative of the claim he made on direct appeal and in his PRP. Specifically, Petitioner alleges that (1) pornography was the "specific link" to the alleged crime and (2) though the police investigation into Petitioner did not produce pornography, police did find pornography in the victim's house allegedly belonging to her neighbor. Thus, Petitioner argues that there was insufficient evidence to support his conviction.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 8**

Respondent argues that Petitioner's conviction is lawful because (1) whether Petitioner possessed pornography was not an element of the crime; (2) at trial, the only disputed element of the crime was whether Petitioner was the perpetrator; (3) the jury has broad discretion to make credibility and factual determinations, which it used in this case to favor B.L.'s testimony; and (4) the Court, sitting in federal habeas, must be doubly deferential to both the jury's credibility determination and the Washington Court of Appeals' adjudication of Petitioner's sufficiency claim.

When evaluating a claim for sufficiency of the evidence, the court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). When a state court of last review does not think the jury's determination is irrational, that determination is entitled to considerable deference under AEDPA. *Id.*

The Washington Court of Appeals reviewed Petitioner's sufficiency claim both on direct appeal and on collateral review. In the July 6, 2017 direct appeal opinion, the Washington Court of Appeals concluded that Petitioner's conviction was supported by sufficient evidence because (1) at his trial, the only element of the crime that was in dispute was whether Mr. Wilson was the perpetrator and (2) the jury found B.L. credible when she testified that Petitioner was the perpetrator of the crime. ECF No. 9-1 at 732. Additionally, in the January 6, 2020 PRP opinion, the Washington Court of Appeals stated that "Mr. Wilson's arguments about a lack of physical evidence or computer pornography to corroborate parts of the victim's testimony were not elements that the State was required to prove. Rather, those are matters affecting the victim's credibility, which this Court does not reweigh." *Id.* at 975 (internal citations omitted).

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 9**

The Court dismisses Petitioner's first ground for relief. Under *Coleman*, the determination by the state court of last review is entitled to considerable deference. Here, the Washington Court of Appeals—both on direct appeal and upon collateral review—concluded that the jury's determination of the evidence was rational. Additionally, there is nothing in the First Amended Petition to suggest that these determinations were contrary to law or fact. As both the state courts and Respondent points out, possession of pornography is not an element of first-degree rape of a child. Wash. Rev. Code § 9A.44.073(1) ("A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."). Moreover, to the extent that Petitioner is arguing that another person was responsible for the crime (i.e., that because the pornography found in the victim's house allegedly belonged to her neighbor, the neighbor was the more likely perpetrator), this argument requires weighing Petitioner's credibility against B.L.'s credibility, which was an issue for the jury to decide. Here, the jury's determination in favor of B.L. was reasonable and there is nothing in the First Amended Petition to suggest that the Washington Court of Appeals' decisions were contrary to or involved an unreasonable application of clearly established federal law. Therefore, the Court dismisses Petitioner's first ground for relief.

**B. Whether Petitioner can make out claims for ineffective assistance of counsel**

Petitioner's ineffective assistance of counsel claims are duplicative of the claims he made on direct appeal and in his PRP. Specifically, Petitioner argues that his counsel was ineffective because he (1) allowed biased Juror 31 to be on the jury; (2) advised Petitioner to sign an illusory agreement to waive his right to a child hearsay reliability hearing in exchange for the prosecution promising to

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 10**

recommend a 93-month sentence;[2] (3) failed to investigate who possessed the pornography found in the victim's house; and (4) failed to investigate alibi witnesses and the gray laptop found in the victim's home.

Respondent argues that Petitioner has not made out an ineffective assistance of counsel claim because (1) the Washington Court of Appeals on direct appeal already determined that Juror 31 was not biased, which is entitled to deference, and Petitioner in any case cannot show that counsel was deficient by allowing Juror 31 to serve; (2) Petitioner's agreement to waive the reliability hearing was not illusory because B.L.'s statements would have been admissible at trial even without the agreement and Petitioner received a substantial sentencing benefit from the agreement; (3) Petitioner has not presented evidence that his counsel failed to investigate the pornography found in the victim's home (and there is evidence from the trial suggesting that counsel *did* investigate the pornography) and the issue of pornography was, as discussed above, only a minor element in Petitioner's case; (4) counsel was reasonable in not pursuing an alibi defense, given that Petitioner admitted that he was living under the same roof as B.L. for substantial periods of time during the charging period; and (5) Petitioner has not presented evidence that his counsel failed to investigate the gray laptop and counsel was reasonable in instead choosing to focus the defense on the lack of corroboration for B.L.'s allegations about the pornographic videos.

Because the Court has already determined that there was a reasonable basis for the state courts to conclude that the evidence supporting Petitioner's conviction was sufficient, even without evidence about who possessed the pornography found

---

[2] In the First Amended Petition, Petitioner's fourth ground for post-conviction relief states "[m]y accuser has proven herself to be unreliable, and her hearsay, according to her own court testimony." ECF No. 5 at 11. But in Petitioner's reply, he clarifies that he intended this argument to "remain included in the Amended Habeas under a 5th addition to ground 2 [the ineffective assistance of counsel claim]." ECF No. 15 at 24.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 11**

in the victim's home, the Court will only address Petitioner's three remaining claims for ineffective assistance of counsel.

*Strickland v. Washington* governs ineffective assistance of counsel claims. 466 U.S. 668 (1984). A defendant's conviction should be reversed if his counsel's assistance was so deficient that his defense was prejudiced. *Id.* at 687. Deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). To succeed, the petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial and that, but for counsel's incompetence, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694. There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. The standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986). The petitioner bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 381. An error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691; *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005). Both prongs of the *Strickland* test must be met before it can be said that the defendant received ineffective assistance of counsel. *Thomas*, 417 F.3d at 1056.

### i.    Failure to strike Juror 31

The Washington Court of Appeals, in its July 6, 2017 direct appeal opinion, rejected Petitioner's ineffective assistance claim based on counsel not challenging Juror 31 for cause. The Washington Court of Appeals stated "Dale Wilson suggests ongoing bias by juror 31 because jury deliberations took an hour. Nevertheless, as illustrated by defense counsel's other challenges for cause, counsel aggressively

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 12**

sought removal of potential jurors who exhibited emotional reactions or other biases . . . . Both defense counsel and the trial court, who were in the position of this reviewing court to determine if juror 31 spoke honestly, concluded that juror 31 would be fair and impartial." ECF No. 9-1 at 730. The Washington Court of Appeals also stated "Wilson fails to establish that rehabilitating the juror rather than removing her possessed no conceivable tactical purpose, such as preventing other less suitable jurors from being seated. The rehabilitation also may have encouraged others to keep an open mind and to recognize the need to thoughtfully decide after hearing all the evidence. Therefore, the first prong of *Strickland* fails." *Id.* at 731.

Petitioner has not demonstrated that the Washington Court of Appeals' determination was contrary to law or fact. It is true that, during voir dire, Juror 31 admitted that she had been molested as a child. But, when defense counsel further questioned her at length about whether she could be fair and impartial despite her childhood experience, Juror 31 answered "I believe I can be fair and impartial" and agreed that "first perception isn't always accurate." *Id.* at 725. This does not support that defense counsel was deficient in allowing remaining Juror 31 to remain on the jury. Additionally, there were nine other jurors on Petitioner's case who were removed because they stated that they could not be fair and impartial due to their personal experiences with sexual abuse—and yet neither defense counsel nor the trial court removed Juror 31. Thus, the Washington Court of Appeals' determination that Petitioner received effective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law because there was a reasonable basis to conclude that Juror 31 was not biased. Therefore, the Court dismisses this ground of Petitioner's ineffective assistance claim.

//

//

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 13**

### ii. Agreement to waive child hearsay reliability hearing

The Washington Court of Appeals, in its July 6, 2017 direct appeal opinion, rejected Petitioner's ineffective assistance claim based on his counsel agreeing to the admissibility of B.L.'s hearsay testimony in exchange for the prosecution recommending a low-end sentence. It stated—in response to Petitioner's argument that "he never stipulated to the use of the [hearsay testimony] to convict him"— "[a] stipulation to admissibility of evidence permits the use of the evidence to convict . . . . Wilson received benefit by reason of the stipulation because the State recommended a sentence in the low end of the sentencing range." *Id.* at 736.

The Washington Court of Appeals also rejected this argument in its January 6, 2020 PRP opinion. First, it stated that, though Petitioner submitted an unsigned declaration stating that he was unaware that he was subject to indeterminate sentencing and that he would not have agreed to the stipulation had he known, this declaration "fail[ed] to satisfy the admissibility requirements of RCW 9A.72.085" and therefore was insufficient to rebut the presumption of effective assistance. *Id.* at 970. Second, it rejected Petitioner's argument that he did not receive any benefit from the agreement, stating that "[b]y obtaining a concession from the State to recommend the low end of the range after trial, Mr. Wilson obtained the best benefit he could have obtained from any possible plea bargain, absent an agreement to reduce the charges, while still retaining the benefit of testing the State's evidence at trial." *Id.* Finally, the Washington Court of Appeals concluded that Mr. Wilson could not show prejudice under *Strickland* because he did not argue that, had he been able to challenge the reliability of the hearsay testimony, this likely would have affected the outcome of his trial—especially given that the trial court independently found that B.L.'s hearsay testimony would have admissible even absent the stipulation. *Id.* at 970-71.

Petitioner has not demonstrated that the Washington Court of Appeals' determination was contrary to law or fact. The trial court found that B.L.'s

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 14**

testimony would have been admissible under Washington state law governing the admissibility of child statements, Wash. Rev. Code § 9A.44.120, regardless of the stipulation. Additionally, the stipulation resulted in a recommended sentence that was 30 months less than what the prosecution otherwise would have recommended, which was a significant benefit to Petitioner. Moreover, Petitioner cannot show prejudice because he does not present any evidence to support that B.L.'s statements failed to satisfy § 9A.44.120 and therefore that the statements would have been inadmissible absent the stipulation. Thus, there is no evidence to support that the Washington Court of Appeals' determination that Petitioner received effective assistance of counsel was contrary to or an unreasonable application of clearly established federal law. Therefore, the Court dismisses this ground of Petitioner's ineffective assistance claim.

### iii.    Failure to investigate alibi witnesses and the gray laptop

The Washington Court of Appeals, in its January 6, 2020 PRP opinion, rejected Petitioner's ineffective assistance claim based on his counsel's failure to investigate alibi witnesses and the gray laptop found in the victim's home. First, it noted that Petitioner tried to support his claim with a sworn affidavit, which asserted that (1) Petitioner asked his trial counsel to sign a declaration, stating that he failed to investigate alibi witnesses and the gray laptop, but (2) his counsel refused to sign the declaration. However, Petitioner's affidavit otherwise did not allege that counsel failed to investigate these matters or "even claim that [Petitioner] asked his lawyer to investigate these matters or explain why his lawyer should have known to investigate these matters (assuming that counsel did in fact fail to do so)." *Id.* at 972. Thus, the Washington Court of Appeals stated that "[w]ithout more, Mr. Wilson's affidavit presents nothing more than a bald assertion that is insufficient to command further review." *Id.* Second, the Washington Court of Appeals looked at the declaration submitted by Petitioner's adult son, Tanner, in which Tanner stated that he (1) saw a link to "porn hub" on

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS** # 15

Ernie's—Laurie Lund's adult son—laptop, (2) observed the victim and her brother playing a video game on this laptop, and (3) during the relevant charging period, the only pornography found in the victim's house belonged to the victim's neighbor. But the Washington Court of Appeals concluded that the declaration "does not provide any reason to believe that Mr. Wilson's trial counsel did not thoroughly investigate the matters" and in fact the "[t]he lack of pornography on Mr. Wilson's computer and the presence of pornography provided by the neighbor Seth was a major theme for the defense throughout the trial and developed thoroughly by defense counsel." *Id.* at 972-73. Finally, the Washington Court of Appeals found that Petitioner's counsel tried to cross-examine the three other suspects of the crime, but "this line of questioning was unfruitful for the defense because the victim was unequivocal in her testimony that none of these individuals ever sexually abused her or ever showed her pornography, and that Mr. Wilson was the only one to do so." *Id.* at 973. Thus, the Washington Court of Appeals denied Petitioner's ineffective assistance of counsel claims due to insufficient evidence to overcome the strong presumption against ineffective assistance.

Petitioner has not demonstrated that the Washington Court of Appeals' determination was contrary to law or fact. For the alibi witnesses, Petitioner does not allege that he provided these potential witnesses' names to defense counsel. Additionally, the only evidence he provided to support his proposed alibi defense was when he filed his PRP, where he submitted a declaration by his ex-wife and some unsworn statements by his relatives. But even assuming that these statements are reliable, Petitioner's counsel was not obligated to provide a weak alibi defense. Here, the charging period of the alleged abuse was between June 1, 2013 to June 1, 2014—and Petitioner concedes that there were significant periods of time during this year where he was living in the same house as B.L. Thus, Petitioner's evidence only provides him partial alibis at best (i.e., for days or weeks at a time) for the

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 16**

year in question. Therefore, there is no evidence to support that counsel was deficient in failing to present an alibi defense.

Additionally, for the gray laptop, Petitioner has not presented evidence to suggest that his counsel failed to investigate this. In fact, the trial record shows that his counsel did develop evidence related to the lack of pornography on Petitioner's computer and the presence of pornography from the victim's neighbor.

Thus, there is no evidence to support that the Washington Court of Appeals' determination that Petitioner received effective assistance of counsel was contrary to or an unreasonable application of clearly established federal law. Thus, the Court dismisses Petitioner's second ground for relief.

**C. Whether the prosecutor relied on perjured testimony in securing Petitioner's conviction**

Petitioner's perjured testimony claim is one of the claims he made in his PRP. Specifically, Petitioner argues that Laurie Lund perjured her testimony when she lied about not knowing whether she knew the deputy prosecutor, Gordon Edgar ("Prosecutor Edgar") prior to Petitioner's case and that Prosecutor Edgar did nothing to correct the perjury.

Respondent argues that Petitioner's conviction is lawful because (1) Laurie Lund's testimony on this issue was not material to the case; (2) to the extent that Petitioner is attempting to raise new evidence in his declaration to support his perjury claim, ECF No. 5 at 19-20, the Court sitting in federal habeas cannot review it; (3) even if this declaration could be considered, Petitioner's declaration is contradicted by Prosecutor Edgar's declaration, ECF No. 10; (4) based on Prosecutor Edgar's declaration, Laurie Lund's testimony was not false and thus there was no obligation for a correction; and (5) the Washington Court of Appeals already rejected Petitioner's perjured testimony claim when collaterally reviewing his conviction and this state court determination is entitled to deference.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 17**

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959). The same is true where the State, "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* To prevail on a claim of the presentation of false evidence, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was material." *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010) (quoting *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)). "False evidence is material 'if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

The Washington Court of Appeals rejected Petitioner's perjured testimony claim in its January 6, 2020 PRP opinion. Specifically, it stated that Mr. Wilson "fails to analyze how any of these statements (if subsequently proven to be false) would amount to perjury. In order to constitute perjury, a statement needs to be more than just false—the statement must be 'material' and the witness must know of the statement's falsehood." ECF No. 9-1 at 974. The Washington Court of Appeals went on to say "[e]ven if Mr. Wilson's petition could surmount this problem, he further fails to analyze how the alleged perjury would constitute a fundamental defect that inherently results in a completely miscarriage of justice . . . Mr. Wilson's failure to address any of the applicable legal standards is fatal to his claim." *Id.*

Petitioner has not demonstrated that the Washington Court of Appeals' conclusion was contrary to law or fact. He cannot show that there was a reasonable likelihood that Laurie Lund falsely testifying about whether she knew Prosecutor Edgar prior to Petitioner's case could have affected the jury's judgment regarding whether Petitioner committed first-degree rape of a child. *Hein*, 601 F.3d at 908.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 18**

Moreover, even if this Court could consider the newly submitted declaration from Petitioner—where he alleges that, while having dinner with Laurie Lund in Wenatchee in 2013, she looked up from the table and said "oh, there's Mr. Edgar who helped me convict my ex-husband" and that Petitioner saw Prosecutor Edgar in the restaurant with Judge John Hotchkiss and the younger clerk of the Douglas County Superior Court—Petitioner still cannot make out a perjured testimony claim. ECF No. 5 at 19-20. Petitioner cannot show that the testimony was actually false or that the prosecution knew or should have known that the testimony was actually false. After all, Prosecutor Edgar in his declaration disputes all of Petitioner's allegations. [3]

Under § 2254(d), state court determinations are entitled to deferential review. Here, there is nothing in the First Amended Petition to suggest that the Washington Court of Appeals' determinations of Petitioner's claims were contrary to or an unreasonable application of clearly established federal law. Therefore, the Court dismisses the petition.

Accordingly, **IT IS HEREBY ORDERED:**

1.      Petitioner's First Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 5, is **DISMISSED with prejudice**. Furthermore, any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. It is not apparent that reasonable jurists would differ on whether the petition should have been resolved in a different manner. Accordingly, any request for a certificate of appealability would be denied.

//

//

//

---

[3] Neither Petitioner's nor Prosecutor Platter's declarations were part of the record the Court of Appeals reviewed when adjudicating Petitioner's PRP.

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS # 19**

2.      The District Court Clerk is directed to enter judgment in favor of Respondent and against Petitioner.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel and *pro se* Petitioner, enter judgment, and **close** this file.

**DATED** this 23rd day of March 2021.



Stanley A. Bastian
United States District Judge

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS** # 20